Opinion concurring in footnote 3 of the opinion filed by Circuit Judge Taranto.
Opinion dissenting from footnote 3 of the opinion filed by Circuit Judge Dyk, in which Circuit Judge Lourie joins.
O'Malley, Circuit Judge.
This long-marooned case returns to us after a voyage alongside two others interpreting the scope of 35 U.S.C. § 314(d)'s "No Appeal" provision and its applicability to time-bar determinations under 35 U.S.C. § 315(b) : Cuozzo Speed Technologies, LLC v. Lee , --- U.S. ----, 136 S.Ct. 2131, 195 L.Ed.2d 423 (2016), and Wi-Fi One, LLC v. Broadcom Corp. , 878 F.3d 1364 (Fed. Cir. 2018) (en banc). Because we have held en banc "that the time-bar *1325 determinations under § 315(b) are appealable," Wi-Fi One , 878 F.3d at 1367, we address for the first time the merits of Appellant Click-to-Call Technologies, LP's ("CTC") contention that the Patent Trial and Appeal Board ("Board") erred in determining that an inter partes review ("IPR") petition challenging claims of CTC's patent was not time-barred under § 315(b).
We conclude that the Board committed legal error in rendering its § 315(b) determination, and reject the proposed, alternative grounds for affirmance. Because the subject petition was time-barred, the Board lacked jurisdiction to institute the IPR proceedings. Accordingly, we vacate the Board's Final Written Decision in Oracle Corp. v. Click-to-Call Technologies LP , No. IPR2013-00312, 2014 WL 5490583 (P.T.A.B. Oct. 28, 2014), Paper No. 52 (Final Written Decision ), and remand with instructions to dismiss IPR2013-00312.
I. BACKGROUND
A. The District Court Actions
On June 8, 2001, Inforocket.com, Inc. ("Inforocket"), the exclusive licensee of U.S. Patent No. 5,818,836 ("the '836 patent"), filed a civil action in the United States District Court for the Southern District of New York. Compl., Inforocket.Com, Inc. v. Keen, Inc. , CA No. 1:01-cv-05130-LAP (S.D.N.Y.), ECF No. 1 (Inforocket Action ). Inforocket served a complaint asserting infringement of the '836 patent on defendant Keen, Inc. ("Keen") on September 14, 2001. Affidavit of Service, Inforocket Action , ECF No. 4.
Shortly thereafter, Keen brought its own infringement suit against Inforocket based on U.S. Patent No. 6,223,165, which proceeded before the same district judge as the Inforocket Action . See generally Keen, Inc. v. Inforocket.Com, Inc. , CA No. 1:01-cv-8226-LAP (S.D.N.Y.) (Keen Action ). In the Keen Action , the district court granted Inforocket's motion for summary judgment of noninfringement and entered judgment in favor of Inforocket in July 2002. See Order Granting Inforocket's Mot. for Summ. J., Keen Action , ECF No. 47; Judgment, Keen Action , ECF No. 48. Keen filed a Notice of Appeal to this court on August 23, 2002. Notice of Appeal, Keen Action , ECF No. 49.
In 2003, while its appeal was pending, Keen acquired Inforocket as its wholly-owned subsidiary. Thereafter, subject to the terms of the merger, Inforocket and Keen stipulated to a voluntary dismissal of both suits "without prejudice," and the district court dismissed both actions on the same day-March 21, 2003. See Stipulation and Order of Dismissal, Inforocket Action ; Stipulation and Order of Dismissal, Keen Action .[1] Later in 2003, Keen changed its name to Ingenio, Inc. ("Ingenio").
On April 20, 2004, Ingenio requested ex parte reexamination of claims 1-21 of the '836 patent. The Director of the Patent & Trademark Office ("Director") granted Ingenio's request, and issued an ex parte reexamination certificate on December 30, 2008. Several claims were cancelled, others were determined to be patentable as amended, and new claims 22-30 were added.
Meanwhile, in late 2007, non-party AT&T announced its plan to acquire Ingenio and integrate Ingenio and YellowPages.com, also owned by AT&T. In January 2008, Ingenio was acquired by a subsidiary of AT&T Inc. and its name was changed to Ingenio, LLC (also "Ingenio"). In April *1326 2012, AT&T sold its interest in YellowPages.com and Ingenio.
CTC subsequently acquired the '836 patent, and, on May 29, 2012, asserted patent infringement claims against multiple parties in the United States District Court for the Western District of Texas. Compl., Click-to-Call Techs. LP v. AT&T, Inc. , No. 1:12-cv-00465-LY (W.D. Tex.), ECF No. 1 (AT&T Action ); Compl., Click-to-Call Techs. LP v. Oracle Corp. , No. 1:12-cv-00468-LY (W.D. Tex.), ECF No. 1 (Oracle Action ). Among the defendants named in the AT&T Action was Ingenio, which subsequently changed its name to YP Interactive LLC ("YP Interactive"). Both the AT&T Action and the Oracle Action are currently stayed.
B. The IPR Proceedings
On May 28, 2013, Ingenio, together with Oracle Corp., Oracle OTC Subsidiary LLC, and YellowPages.com LLC (together, "Petitioners" or "Appellees"),[2] filed a single IPR petition challenging claims of the '836 patent on anticipation and obviousness grounds. CTC filed its Preliminary Response on August 30, 2013, contending, among other things, that § 315(b) statutorily barred institution of IPR proceedings, and that Ingenio lacked standing under 37 C.F.R. § 42.101(b). In its Preliminary Response, CTC presented evidence that Ingenio was served with a complaint alleging infringement of the '836 patent in 2001.
The Board held a conference call with counsel for CTC and Petitioners in September 2013, in part to discuss CTC's § 315(b) argument. The Board then issued an order pursuant to 37 C.F.R. § 42.5 in which it requested additional briefing addressing the terms of the dismissal of the Inforocket Action . Both parties submitted additional briefing in compliance with the Board's request.
The Board issued its Institution Decision on October 30, 2013. With respect to the § 315(b) issue, the Board acknowledged that Ingenio was served with a complaint alleging infringement of the '836 patent on June 8, 2001 and found CTC's timeline of events "helpful in determining whether Ingenio, LLC is barred from filing an inter partes review of the '836 patent." J.A. 287. The Board then recited the language of § 315(b), and stated that the "statute requires that the service date of the complaint be more than one year before the petition was filed-in this case more than one year before May 28, 2013." J.A. 288.
Notwithstanding the above, the Board concluded that CTC "has not established that service of the complaint in the [Inforocket Action ] bars Ingenio, LLC from pursuing an inter partes review for the '836 patent" because that infringement suit was "dismissed voluntarily without prejudice on March 21, 2003, pursuant to a joint stipulation under Fed. R. Civ. P. 41(a)." J.A. 288-89. The Board wrote that "[t]he Federal Circuit consistently has interpreted the effect of such dismissals as leaving the parties as though the action *1327 had never been brought," citing this court's decisions in Graves v. Principi , 294 F.3d 1350 (Fed. Cir. 2002), and Bonneville Associates, Ltd. Partnership v. Barram , 165 F.3d 1360 (Fed. Cir. 1999). J.A. 289. The Board also relied on Wright & Miller's Federal Practice and Procedure treatise for the proposition that, "as numerous federal courts have made clear, a voluntary dismissal without prejudice under Rule 41(a) leaves the situation as if the action never had been filed." J.A. 289 (quoting 9 Wright, Miller, Kane, and Marcus, Federal Prac. & Proc. Civ. § 2367 (3d ed.) ). The Board concluded by determining that "the dismissal of the infringement suit brought by Inforocket against Keen-now Ingenio, LLC-nullifies the effect of the service of the complaint and, as a consequence, does not bar Ingenio, LLC or any of the other Petitioners from pursuing an inter partes review of the '836 patent." J.A. 289. In light of this determination, the Board did not address the following two contingent questions: (1) whether the patent at issue in the Inforocket Action is the same patent at issue in the IPR due to amendments made in the interim; and (2) whether § 315(b)'s time bar should be determined on a "petitioner-by-petitioner" basis. J.A. 289-90.
CTC requested rehearing of this § 315(b) determination, but the Board denied its request. CTC filed its Patent Owner Response on January 16, 2014, addressing the merits of Petitioners' unpatentability arguments and again requesting dismissal of the petition because the Board lacked statutory authority to review the '836 patent under § 315(b), and because Petitioners lacked standing under 37 C.F.R. § 42.101(b).
The Board issued its Final Written Decision on October 28, 2014, reaffirming its conclusion that Petitioners were not barred from filing an IPR petition by stating that, "because [the Inforocket Action ] was dismissed without prejudice, Federal Circuit precedent interprets such a dismissal as leaving the parties in the same legal position as if the underlying complaint had never been served." Final Written Decision at *7. The Board also determined that claims 1, 2, 8, 12, 13, 15, 16, 19, 22, 23, 26, 29, and 30 either were anticipated by or would have been obvious in view of certain prior art references. Id. at *14. Those merits determinations are not at issue in this appeal.
C. The History of this Appeal
CTC filed its Notice of Appeal on November 25, 2014, and briefing commenced shortly thereafter. In April 2015, the Director intervened solely to address the § 315(b) time bar issue. See Intervenor Docketing State-ment, No. 15-1242 (Fed. Cir. Apr. 1, 2015), ECF No. 28.
On October 12, 2015, counsel for Appellees submitted a Rule 28(j) letter informing the court of our decision in Achates Reference Publishing, Inc. v. Apple Inc. , 803 F.3d 652 (Fed. Cir. 2015), arguing that Achates mandates dismissal of the appeal for lack of appellate jurisdiction. Rule 28(j) Citation of Suppl. Authority, No. 15-1242 (Fed. Cir. Oct. 12, 2015), ECF No. 64. In light of Achates , this panel subsequently waived oral argument, and, on November 12, 2015, issued an order dismissing CTC's appeal for lack of jurisdiction. Click-to-Call Techs., LP v. Oracle Corp. , 622 F. App'x 907 (Fed. Cir. 2015) (per curiam) ( Click-to-Call I ).
CTC petitioned for writ of certiorari, and, on June 27, 2016, the Supreme Court granted the petition, vacated this court's judgment in Click-to-Call I , and remanded for further consideration in light of its opinion in Cuozzo . Click-to-Call Techs., LP v. Oracle Corp. , --- U.S. ----, 136 S.Ct. 2508, 195 L.Ed.2d 837 (2016). We directed *1328 the parties to file supplemental briefs and the parties complied with our directive.
On September 21, 2016, counsel for Appellees filed a second letter regarding supplemental authority, this time informing the court of our decision in Wi-Fi One, LLC v. Broadcom Corp. , 837 F.3d 1329 (Fed. Cir. 2016). Rule 28(j) Citation of Suppl. Authority, No. 15-1242 (Fed. Cir. Sept. 21, 2016), ECF No. 83. In this letter, Appellees argued that, because Wi-Fi One confirmed that Achates remained good law, CTC's appeal should again be dismissed for lack of appellate jurisdiction. We agreed with Appellees that we were bound by our precedents in Wi-Fi One and Achates , and on November 17, 2016, dismissed CTC's appeal for a second time. Click-to-Call Techs., LP v. Oracle Corp. , No. 15-1242, 2016 WL 6803054 (Fed. Cir. Nov. 17, 2016) ( Click-to-Call II ).
On December 5, 2016, CTC filed a petition for en banc rehearing, principally arguing that Achates and Wi-Fi One should be overruled. Pet. for Reh'g En Banc, No. 15-1242 (Fed. Cir. Dec. 5, 2016), ECF No. 91. Less than one month later, CTC's wish was partially granted when this court agreed to consider en banc whether it should over-rule Achates and hold that judicial review is available for a patent owner to challenge the Director's determination that the petitioner satisfied the timeliness requirement of 35 U.S.C. § 315(b). Order, Wi-Fi One, LLC v. Broadcom Corp. , Nos. 2015-1944, -1945, -1946 (Fed. Cir. Jan. 4, 2017) (en banc), ECF No. 67. The panel in this case subsequently held CTC's petition for rehearing in abeyance pending the outcome of Wi-Fi One .
On January 8, 2018, we issued our en banc decision in Wi-Fi One , expressly overruling Achates and holding that time-bar determinations under § 315(b) are appealable. 878 F.3d at 1367. We subsequently granted CTC's petition for rehearing en banc, which we construed as a petition for panel rehearing, and authorized supplemental briefing regarding the merits of the Board's compliance with § 315(b). Order, No. 15-1242 (Fed. Cir. Jan. 19, 2018), ECF No. 99. CTC, Petitioners, and the Director, as Intervenor, all filed supplemental briefs in February and March of this year.
We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).
II. DISCUSSION
A. Section 315(b) and Voluntary Dismissals Without Prejudice
The principal question on appeal is whether the Board erred in interpreting the phrase "served with a complaint alleging infringement of [a] patent" recited in § 315(b) such that the voluntary dismissal without prejudice of the civil action in which the complaint was served "does not trigger" the bar. Final Written Decision , slip op. at 12. We hold that it did.[3]
1. Legal Standards
We review the Board's statutory interpretation pursuant to Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc. , 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), Auer v. Robbins , 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), and *1329 United States v. Mead Corp. , 533 U.S. 218, 229-30, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Chevron requires that a court reviewing an agency's construction of a statute it administers first discern "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842, 104 S.Ct. 2778. If the answer is yes, the inquiry ends, and the reviewing court must give effect to Congress's unambiguous intent. Id. at 842-43, 104 S.Ct. 2778. If the answer is no, the court must consider "whether the agency's answer [to the precise question at issue] is based on a permissible construction of the statute." Id. at 843, 104 S.Ct. 2778. The agency's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." United States v. Eurodif S.A. , 555 U.S. 305, 316, 129 S.Ct. 878, 172 L.Ed.2d 679 (2009) (citing Mead , 533 U.S. at 229-30, 121 S.Ct. 2164 ).
When a statute expressly grants an agency rulemaking authority and does not "unambiguously direct[ ]" the agency to adopt a particular rule, the agency may "enact rules that are reasonable in light of the text, nature, and purpose of the statute." Cuozzo , 136 S.Ct. at 2142 (citing Mead , 533 U.S. at 229, 121 S.Ct. 2164, and Chevron , 467 U.S. at 843, 104 S.Ct. 2778 ). When the Director does adopt rules, "[w]e accept the [Director's] interpretation of Patent and Trademark Office regulations unless that interpretation is plainly erroneous or inconsistent with the regulation." In re Sullivan , 362 F.3d 1324, 1326 (Fed. Cir. 2004) (quoting Eli Lilly Co. v. Bd. of Regents of the Univ. of Wash. , 334 F.3d 1264, 1266 (Fed. Cir. 2003) (citing Auer , 519 U.S. at 461-62, 117 S.Ct. 905, and Bowles v. Seminole Rock & Sand Co. , 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) ) ) (internal quotations omitted).
Where an agency instead engages in "interpretive," rather than "formal," rulemaking, a lower level of deference might apply. See Mead , 533 U.S. at 230-31, 121 S.Ct. 2164 (describing notice-and-comment as "significant ... in pointing to Chevron authority"); Reno v. Koray , 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (according "some deference" to an interpretive rule that "do[es] not require notice and comment" (citations omitted) ). The Supreme Court has explained that "[t]he fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." Mead , 533 U.S. at 228, 121 S.Ct. 2164 (footnotes omitted) (citing Skidmore v. Swift & Co. , 323 U.S. 134, 139-40, 65 S.Ct. 161, 89 L.Ed. 124 (1944) ).
2. Chevron Step One
We begin our analysis of the Board's interpretation of § 315(b) by construing the provision. "As in any case of statutory construction, our analysis begins with the language of the statute." Hughes Aircraft Co. v. Jacobson , 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (internal quotation marks and citation omitted). "The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' " Barnhart v. Sigmon Coal Co., Inc. , 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (quoting Robinson v. Shell Oil Co. , 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ). In doing so, we "must read the words 'in their context and with a view to their place in the overall statutory scheme.' " King v. Burwell , -- U.S. ----, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015) (quoting FDA v. Brown & Williamson Tobacco Corp. , 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) ). This is because statutory "[a]mbiguity is a creature *1330 not of definitional possibilities but of statutory context." Brown v. Gardner , 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). Importantly, we may not conclude that a statutory provision is ambiguous until we conclude that resort to all standard forms of statutory interpretation are incapable of resolving any apparent ambiguity which might appear on the face of the statute. See Chevron , 467 U.S. at 843 n.9, 104 S.Ct. 2778. And, in discerning whether a statute is ambiguous, we must take care not to weigh competing policy goals, for "[i]t is Congress's job to enact policy and it is th[e] [c]ourt's job to follow the policy Congress has prescribed." SAS Inst., Inc. v. Iancu , --- U.S. ----, 138 S.Ct. 1348, 1358, 200 L.Ed.2d 695 (2018).
a. Plain and Unambiguous Language
We "[s]tart where the statute does." SAS , 138 S.Ct. at 1355. Section 315(b), titled "Patent Owner's Action," provides that an IPR "may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b) (emphasis added). The statute does not contain any exceptions or exemptions for complaints served in civil actions that are subsequently dismissed, with or without prejudice. Nor does it contain any indication that the application of § 315(b) is subject to any subsequent act or ruling. Instead, the provision unambiguously precludes the Director from instituting an IPR if the petition seeking institution is filed more than one year after the petitioner, real party in interest, or privy of the petitioner "is served with a complaint" alleging patent infringement. Simply put, § 315(b)'s time bar is implicated once a party receives notice through official delivery of a complaint in a civil action, irrespective of subsequent events.
The "ordinary, contemporary, common meaning[s]" of the operative terms "served" and "complaint" support the understanding that it is wholly irrelevant to the § 315(b) inquiry whether the civil action in which the complaint was filed is later voluntarily dismissed without prejudice. Black's Law Dictionary defines "serve" as "[t]o make legal delivery of (a notice or process)" or "[t]o present (a person) with a notice or process as required by law," and defines "service" as "[t]he formal delivery of a writ, summons, or other legal process[.]" Black's Law Dictionary 1491 (9th ed. 2009). It defines "complaint" as "[t]he initial pleading that starts a civil action and states the basis for the court's jurisdiction, the basis for the plaintiff's claim, and the demand for relief." Id. at 323, 129 S.Ct. 878. These definitions confirm that the plain meaning of the phrase "served with a complaint" is "presented with a complaint" or "delivered a complaint" in a manner prescribed by law. Indeed, at least one Board decision has interpreted the phrase "served with a complaint" in precisely this manner: "the legally-charged text 'served with a complaint' is used ordinarily in connection with the official delivery of a complaint in a civil action." Amkor Tech., Inc. v. Tessera,Inc. , No. IPR2013-00242, slip op. at 9, 2014 WL 2864151 (P.T.A.B. Jan. 31, 2014), Paper No. 98.
This reading of § 315(b) is confirmed by our en banc decision in Wi-Fi One , in which we held that the provision sets forth a "condition precedent to the Director's authority to act," based on the "timely filing of a petition." 878 F.3d at 1374. Indeed, we observed that, "if a petition is not filed within a year after a real party in interest, or privy of the petitioner is served with a complaint, it is time-barred by § 315(b), and the petition cannot be rectified and in no event can IPR be instituted." Id. at 1374 n.9 (emphases added).
*1331 This is so because § 315(b)'s time bar concerns "real-world facts that limit the agency's authority to act under the IPR scheme," reflecting Congress's "balancing [of] various public interests." Id. at 1374 ; see id. at 1377 (O'Malley, J., concurring) (explaining that " § 315(b) codifies one of the 'important procedural rights' that Congress chose to afford patent owners in the IPR context" (quoting Lindahl v. Office of Pers. Mgmt. , 470 U.S. 768, 791, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) ) ). It is impossible to square Wi-Fi One 's "cannot be rectified" and "in no event" language with the possibility that subsequent events in the civil action might operate to "nullify" service of the complaint for the purpose of § 315(b)'s time bar.[4]
Moreover, adopting the Board's preferred construction of the phrase "served with a complaint" in § 315(b)"would impose additional conditions not present in the statute's text." Return Mail, Inc. v. U.S. Postal Serv. , 868 F.3d 1350, 1363 (Fed. Cir. 2017) (citing Norfolk Dredging Co. v. United States , 375 F.3d 1106, 1111 (Fed. Cir. 2004), for its holding that courts must avoid "add[ing] conditions" to the applicability of a statute that do not appear in the provision's text). Congress specifically addressed the effect of a dismissal of an IPR petitioner's district court action in § 315(a)(2), but did not include any similar language in § 315(b). Congress also demonstrated that it knew how to provide an exception to the time bar by including a second sentence in the provision: "The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c)." 35 U.S.C. § 315(b). Similarly, Congress could have chosen to include a variation of the phrase "unless the action in which the complaint was served was later dismissed without prejudice," but it did not do so. We reject the Board's effort to graft this additional language into § 315(b). Cf. Return Mail , 868 F.3d at 1363 (rejecting appellant's argument, in part, because "Congress could have easily specified the phrase 'sued for infringement' to require being sued for infringement under 35 U.S.C. § 271 or otherwise excluded [ 28 U.S.C.] § 1498 suits from the definition of 'sued for infringement,' but it did not do so").
b. Legislative History
The legislative history of § 315(b) further supports the understanding that its time bar concerns only the date on which the complaint was formally served. For example, during the March 2011 Senate debates, Senator Kyl made clear that, under the version of § 315(b) then being considered, "if a party has been sued for infringement and wants to seek inter partes review, he must do so within 6 months of when he was served with the infringement complaint." 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl) (emphases added). This unequivocal reference to the date on which an accused infringer was served suggests that Congress did not contemplate subsequent events "nullifying" § 315(b)'s time bar.
*1332 The legislative history also clarifies that Congress chose the date of service, as opposed to some other event, as the trigger for § 315(b)'s time bar because service of a complaint is the seminal notice-conferring event in a district court action. As the Supreme Court has explained, "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." Henderson v. United States , 517 U.S. 654, 672, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) (emphasis added). During the September 2011 Senate debates, Senator Kyl offered the following justification for extending the previously contemplated six-month time bar to one year. He observed that companies, in particular those in the high-technology sector, "are often sued by [patentees] asserting multiple patents with large numbers of vague claims, making it difficult to determine in the first few months of the litigation which claims will be relevant and how those claims are alleged to read on the defendant's products." 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl). Recognizing that "[c]urrent law imposes no deadline on seeking inter partes reexamination," he reasoned that, "in light of the present bill's enhanced estoppels, it is important that the section 315(b) deadline afford defendants a reasonable opportunity to identify and understand the patent claims that are relevant to the litigation." Id. (emphasis added). Congress, in "balancing various public interests," decided to use the "real-world fact[ ]" of when a petitioner, real party in interest, or privy of the petitioner was "served with a complaint" to trigger § 315(b). Wi-Fi One , 878 F.3d at 1374.
c. Conclusion Regarding Chevron Step One
"Because a statute's text is Congress's final expression of its intent, if the text answers the question, that is the end of the matter." Timex V.I., Inc. v. United States , 157 F.3d 879, 882 (Fed. Cir. 1998) (citations omitted); see also Cuozzo , 136 S.Ct. at 2142 ("Where a statute is clear, the agency must follow the statute."). Here, the text of § 315(b) clearly and unmistakably considers only the date on which the petitioner, its privy, or a real party in interest was properly served with a complaint. Because "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,' " our inquiry ceases and we need not proceed to Chevron 's second step. Barnhart , 534 U.S. at 450, 122 S.Ct. 941 (quoting Robinson , 519 U.S. at 340, 117 S.Ct. 843 ). Simply put, there is no gap to fill or ambiguity to resolve: "[w]here a statute's language carries a plain meaning, the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer." SAS , 138 S.Ct. at 1355 (citing Soc. Sec. Bd. v. Nierotko , 327 U.S. 358, 369, 66 S.Ct. 637, 90 L.Ed. 718 (1946) ).
2. The Board's Contrary Reasoning Is Unpersuasive
Notwithstanding the absence of any facial ambiguity in the phrase "served with a complaint," the Board concluded that CTC "has not established that service of the complaint in the infringement suit brought by Inforocket against Keen bars Ingenio, LLC from pursuing an inter partes review for the '836 patent." JA. 288. To support this conclusion, the Board wrote that the "Federal Circuit consistently has interpreted the effect of such dismissals as leaving the parties as though the action had never been brought," and cited this *1333 court's decisions in Graves , 294 F.3d at 1356, and Bonneville , 165 F.3d at 1364, and a section of Wright and Miller's Federal Practice and Procedure treatise. Id. The Board concluded that, "[a]ccordingly, the dismissal of the infringement suit brought by Inforocket against Keen-now Ingenio, LLC-nullifies the effect of the service of the complaint and, as a consequence, does not bar Ingenio, LLC or any of the other Petitioners from pursuing an inter partes review of the '836 patent." Id. (emphasis added).
The Board misunderstood that the text of § 315(b) is agnostic as to the "effect" of the service-i.e., what events transpired after the defendant was served. The provision only probes whether the petitioner, real party in interest, or privy of the petitioner was served with a complaint alleging patent infringement more than one year before the IPR petition was filed. We reject the Board's interpretation of § 315(b) for this reason alone.
Even if the provision could fairly be read to consider the "effect" of service-which it cannot-the Board's reliance on the cited authorities was erroneous.[5] We interpret the Board's reasoning as presupposing that the phrase "served with a complaint" is a legal term of art with some latent ambiguity, necessitating the reliance on additional interpretive aids. Assuming arguendo that the phrase is ambiguous, none of the authorities on which the Board relied help resolve this ambiguity because they each concern fundamentally different contexts, and consequently shed no light on "whether service of a complaint can be nullified." Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc. , 817 F.3d 1293, 1301 (Fed. Cir. 2016) (recognizing that "we have held in other cases that dismissals without prejudice leave the parties as though the action had never been brought," but questioning "whether service of a complaint can be nullified").
Both Bonneville and Graves concern the dismissal of an appeal in a first proceeding and the extent to which that dismissal impacts the appellant's ability to initiate a later proceeding. In the former, Bonneville, after receiving an adverse decision from a contracting officer, filed a notice of appeal with the General Services Administration Board of Contract Appeals, but thereafter "withdr[e]w" its notice of appeal pursuant to the Board's rules to "pursue its appeal in the U.S. Claims Court." Bonneville , 165 F.3d at 1362. Before the Board actually dismissed the appeal without prejudice-under the condition that the dismissal would transform into one with prejudice unless Bonneville reinstated its appeal in three years-Bonneville brought suit in the Claims Court. Id. The Claims Court, however, dismissed the suit, holding that Bonneville's filing of the appeal to the Board constituted an election of remedies that barred Bonneville from subsequently invoking the court's jurisdiction. Id.
We affirmed the Claims Court's dismissal, id. , and ten days later, Bonneville sought to reinstate its appeal to the Board, arguing that it was complying with the three-year deadline set forth in the Board's dismissal order, id. at 1363. But the Board "applied the same principle that the federal courts had applied in construing the similar provision governing voluntary dismissals without prejudice in Federal Rule of Civil Procedure 41(a), namely, that an appeal so dismissed 'leaves the situation as if the suit had never been brought.' " Id. The Board therefore concluded that,
because Bonneville voluntarily caused its appeal to be dismissed without prejudice *1334 in order to pursue the appeal in another forum, Bonneville is placed in the same position as if the first appeal had never been filed. The second filing does not relate back to the date of the first filing. Moreover, as the second complaint filed on December 29, 1994 is a "new appeal" filed after the expiration of the CDA ninety-day time limit, it is untimely. We lack jurisdiction to hear this appeal.
Id.
We affirmed the Board's dismissal, finding no plain error in the Board's decision to treat Bonneville's dismissal without prejudice the same way that federal courts would have treated it under Rule 41(a). Id. at 1364. We then disagreed with Bonneville's criticism of the Board's rule as a "legal fiction," writing that its rule "merely states the consequence of a voluntary dismissal without prejudice, namely, that the appellant cannot thereafter resurrect the appeal after the statute of limitations on the cause of action has run." Id. (emphasis added).
Graves likewise concerns an appellant's effort to seek relief a second time beyond a limitations period. After Graves received an adverse decision from the Board of Veterans' Appeals, he, proceeding pro se , timely appealed to the U.S. Court of Appeals for Veterans Claims ("Veterans Court"). 294 F.3d at 1353. He thereafter retained counsel, who filed in the Veterans Court a document requesting dismissal without prejudice, but neither mentioning any rules of the Veterans Court nor indicating that Graves intended to seek reconsideration of the Board's decision. Id. The Veterans Court thereafter dismissed the appeal pursuant to Rule 42 of its Rules of Practice and Procedure. Id.
Graves then asked the Board to reconsider its initial decision, and after the Board denied this request, Graves appealed both the initial decision and the denial of his request for reconsideration to the Veterans Court. Id. The Veterans Court dismissed this appeal for lack of jurisdiction on the ground that it was untimely, pointing out that, pursuant to 38 U.S.C. § 7266(a), Graves was required to file his notice of appeal with the Veterans Court within 120 days of the date the Board mailed its initial decision to him. Id. Citing an earlier decision, the Veterans Court observed that, if Graves had filed a motion for reconsideration with the Board within the 120-day judicial appeal period, the finality of the initial Board decision "would have been abated" and a new 120-day period would have begun to run on the date that the Board mailed him a denial of his motion for reconsideration. Id.
We affirmed, writing that "[t]he most fundamental problem" facing Graves "is the fact that, as a matter of law, once his appeal was dismissed-for whatever purpose and whether with or without prejudice-it was as if the appeal had never been filed." Id. at 1355-56. We noted that, in Bonneville , "the nullifying effect of a voluntary dismissal in accordance with Fed. R. Civ. P. 41(a)(1) was applied in the context of a General Services Administration Board of Contract Appeals dismissal," and concluded that "the rule is equally applicable to voluntary dismissals under Rule 42 of the Veterans Court." Id. at 1356. Thus, once Graves dismissed his initial appeal, "the Veterans Court no longer had jurisdiction over the action" and he "was barred from appealing" the Board's decision because "he was in the same situation that he would have been in if he had never filed a notice of appeal." Id.
These two cases are inapplicable to the issue presented in this appeal. Both concern whether an appellant's filing of a notice of appeal and subsequent dismissal of that appeal "tolls" the jurisdictional deadline to appeal from the decision below. The cases, relying on the principle that *1335 "[t]he effect of a voluntary dismissal without prejudice pursuant to Rule 41(a)'is to render the proceedings a nullity and leave the parties as if the action had never been brought,' " Bonneville , 165 F.3d at 1364 (emphasis added) (quoting Williams v. Clarke , 82 F.3d 270, 273 (8th Cir. 1996) ), answer this question in the negative. More broadly, the background legal principle in these cases is that a party's voluntary dismissal of its action or appeal will not toll a statute of limitations, and, as a result, a subsequently filed action or appeal must still be brought within the original limitations period.
Here, by contrast, the appropriate question is whether the voluntary, without prejudice dismissal of a civil action in which a complaint had been served nullifies an administrative time bar that is triggered by service of that complaint. It does not. Yet the Board, without explanation, extended the background principle of Graves and Bonneville to conclude that such a dismissal "nullifies the effect of the service of the complaint." It then relied on this erroneous conclusion to "un-ring" § 315(b)'s time bar. In effect, the Board relied on cases holding that the voluntary dismissal of an action or appeal does not toll a statute of limitations to conclude that the voluntary dismissal without prejudice of a civil action does indefinitely toll § 315(b) and permitted an otherwise untimely IPR to proceed, turning Bonneville and Graves on their head.
These cases do not delve into the meaning of the terms "serve" or "complaint," nor do they hold that the voluntary, without prejudice dismissal of a civil action transforms the ordinary meaning of the phrase "served with a complaint" into something else. Although we "presume that 'Congress intended to retain the substance of the common law' " when "a statute covers an issue previously governed by the common law," Kirtsaeng v. John Wiley & Sons, Inc. , 568 U.S. 519, 538, 133 S.Ct. 1351, 185 L.Ed.2d 392 (2013) (quoting Samantar v. Yousuf , 560 U.S. 305, 320, n.13, 130 S.Ct. 2278, 176 L.Ed.2d 1047 (2010) ), where the statutory scheme is clear, we are not to "invent an atextual explanation for Congress's drafting choices," SAS , 138 S.Ct. at 1357.
Where, moreover, the proposed atextual explanation is the alleged existence of a "background legal principle," that principle must both be firmly established and unequivocal before it can justify ignoring the plain text of the statute. The background legal principle on which Petitioners and the Director rely-that a "dismissal without prejudice leaves the parties in the same legal position as if the underlying complaint had never been filed," for all purposes, Appellees Suppl. Br. 3-is anything but unequivocal. A voluntary dismissal without prejudice only leaves the dismissed action without legal effect for some purposes; for many other purposes, the dismissed action continues to have legal effect. Indeed, a voluntary dismissal without prejudice (1) may give rise to costs and fees under Rule 11, see Wright & Miller, Federal Prac. & Proc. Civ. §§ 1336, 2367; (2) forbids the filing of a subsequent action "based on or including the same claim" under Rule 41(a)(1)(B) ; and (3) may establish the necessary case or controversy for a later declaratory judgment action, see TransWeb, LLC v. 3M Innovative Props. Co. , 812 F.3d 1295, 1300 (Fed. Cir. 2016) ("After 3M voluntarily dismissed [its] suit due to an apparent personal jurisdiction issue, TransWeb filed suit in New Jersey for declaratory judgment."). The Director itself acknowledges that the filing of a patent infringement complaint, even if later voluntarily dismissed, can play a role in proving the defendant's knowledge of the patent if charged with willful infringement. Intervenor's Second Suppl. Br. 8.
*1336 And counsel for Petitioners admitted at oral argument that § 315(b)"appears to be unique relative to the other cases cited in that it involves the act of service triggering a limitations period," suggesting that there is no pertinent "background legal principle" that might alter our view of the plain and ordinary meaning of the phrase "served with a complaint." Oral Arg. at 22:13-22:29, available at http://oralarguments.cafc.uscourts.gov/default.aspx ?fl=2015-1242.mp3.[6]
For all of these reasons, we conclude that a defendant served with a complaint as part of a civil action that is voluntarily dismissed without prejudice remains "served" with the "complaint." This remains true even if that action becomes a "nullity" for other purposes and even if such service becomes legally irrelevant in a subsequent court action.
B. Petitioners' Alternative Arguments
Petitioners also argue that, even if the Board erred in concluding that the voluntary dismissal of the district court action rendered § 315(b) inapplicable because the dismissal "nullifie[d] the effect of the service," the institution of the IPR proceeding was nevertheless proper for two independent reasons. Although CTC initially posited that subsidiary factual questions precluded us from deciding in the first instance the merits of Petitioners' alternative arguments, Reply Br. 24, the parties (but not the Director) now agree that no further fact-finding is required. We therefore address these arguments in turn. See Killip v. Office of Pers. Mgmt. , 991 F.2d 1564, 1568-69 (Fed. Cir. 1993) (recognizing, in the context of a Merit Systems Protection Board case, that we may "affirm the Board on grounds other than those relied upon in rendering its decision, when upholding the Board's decision does not depend upon making a determination of fact not previously made by the Board").
1. The Impact of Ex Parte Reexamination
Petitioners first contend that, because the claims of the '836 patent were materially changed during a subsequent ex parte reexamination, neither they nor any other entity was served with a complaint alleging infringement of this patent more than one year before the IPR petition was filed. See Appellees Br. 8, 19-21. In particular, they claim that, "[b]ecause each claim of the reexamined patent substantively differs from the claims of the original patent, the reexamined '836 patent should be treated as a new patent for purposes of § 315(b)." Id. at 21.
Petitioners are mistaken. "Unlike reissue, reexamination does not result in the surrender of the original patent and the issuance of a new patent." Aspex Eyewear, Inc. v. Marchon Eyewear, Inc. , 672 F.3d 1335, 1341-42 (Fed. Cir. 2012). Indeed, the relevant provision provides that a reexamination certificate "incorporat[es] in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307(a) (emphasis added). Petitioners' reliance on 35 U.S.C. § 307(b) is unavailing. That provision simply means that any amended or new claim incorporated in a reexamined patent has the same effect as that specified in 35 U.S.C. § 252 for a reissued patent only with respect to *1337 so-called "intervening rights." In other words, § 307(b) statutorily protects the ability of a "person or that person's successors in business" to continue to use, offer for sale, or sell anything protected by the amended or new claims, provided such actions do not infringe a valid claim of the reexamined patent that was in the original patent. Compare 35 U.S.C. § 307(b), with 35 U.S.C. § 252. Congress could have included in any of 35 U.S.C. §§ 252, 307(b), or 315(b) language regarding the effect of reexamination on the deadline to file an IPR-it chose not to do so.
Petitioners' emphasis on alleged differences in claim scope misunderstands that § 315(b) does not speak in terms of claims. Instead, the provision asks on what date the petitioner, real party in interest, or privy of the petitioner "is served with a complaint alleging infringement of the patent ," making clear that the timeliness analysis is to be made with reference to "the patent." The Director agrees with this conclusion. See Intervenor Second Suppl. Br. 10 n.3.
Even if we were to hold that § 315(b) is ambiguous with respect to whether the term "the patent" includes reexamined patents having amended or new claims of "substantively differ[ent]" scope than the original claims, we would still reject Petitioners' argument that the time bar does not apply here. We have held that, "in the absence of a clear showing that such a material difference in fact exists in a disputed patentable reexamination claim, it can be assumed that the reexamined claims will be a subset of the original claims and that no new cause of action will be created." Senju Pharm. Co., Ltd. v. Apotex Inc. , 746 F.3d 1344, 1353 (Fed. Cir. 2014). We reached this holding after asking whether "it is possible that a reexamination could ever result in the issuance of new patent claims that were so materially different from the original patent claims as to create a new cause of action, but at the same time were sufficiently narrow so as not to violate the rule against reexamined claims being broader than the original claims." Id. Petitioners did not make any showing in the IPR proceeding that the amended or new claims of the '836 patent are "materially different" than the original claims, and we reject their unsupported effort to do so for the first time on appeal.
For these reasons, we reject Petitioners' effort to deem the reexamined '836 patent a "new patent" for § 315(b) purposes.
2. The Relevance of "Non-Barred" Petitioners
Petitioners also submit that, even if § 315(b)'s time bar applies to YP Interactive, it would not apply to YellowPages.com, Oracle Corporation, or Oracle OTC Subsidiary LLC. According to Petitioners, because YellowPages.com was not in privity with YP Interactive or its predecessors "before at least 2008," YellowPages.com never had any opportunity, as a privy or otherwise, to participate in the Inforocket Action or Keen Action , which were voluntarily dismissed years earlier. Appellees Br. 24. They also submit that the Oracle entities were not parties, real parties in interest, or privies of Ingenio with respect to these earlier proceedings. In Petitioners' view, these arguments are relevant because, if these entities had filed separate petitions, those petitions would not have been time barred under § 315(b). Moreover, they submit that, had YP Interactive filed a separate petition, the Director could have joined its petition with the hypothetical non-barred petitions pursuant to 35 U.S.C. § 315(c), rendering any error in the Board's § 315(b) determination vis-à-vis YP Interactive harmless.
We reject these efforts to separate YP Interactive from the other Petitioners to save the petition as to the latter. We need not scrutinize the legal relationships between *1338 YellowPages.com, Oracle Corporation, and Oracle OTC Subsidiary LLC, on the one hand, and Ingenio/YP Interactive, on the other, to address Petitioners' arguments. These four entities declared themselves as "the Petitioner" in their sole IPR petition, and certified that Ingenio (now YP Interactive) is a "real party in interest." J.A. 345. In these circumstances, under current law, Petitioners are properly treated as an undifferentiated unit that filed an untimely petition.
Section 315(b) and the implementing regulation both treat a petition as if there is a single petitioner for purposes of the one-year rule. Section 315(b) bars institution of an IPR where "the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner , real party in interest , or privy of the petitioner is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b) (emphases added). The governing regulation, which largely parrots § 315(b), is to the same effect:
[a] person who is not the owner of a patent may file with the [Patent & Trademark Office] a petition to institute an [IPR] of the patent unless ... [t ]he petition requesting the proceeding is filed more than one year after the date on which the petitioner, the petitioner's real party-in-interest, or a privy of the petitioner is served with a complaint alleging infringement of the patent.
37 C.F.R. § 42.101(b) (emphases added). Both the statute and the regulation ask only two questions: (1) when was "the petition" filed; and (2) when was "the petitioner," the petitioner's real party in interest, or a privy of the petitioner served with a complaint? They do not differentiate between multiple petitioners.
We read section 315(b), as implemented by the existing regulation, to apply petition-by-petition, not petitioner-by-petitioner, with the collection of petitioners on a single petition treated as a unit indistinguishable from each member of that collection. This reading of the statutory and regulatory reference to the singular "the petitioner" for the one-year time bar is supported by the fact that, in the same statutory scheme, Congress expressly recognized the possibility of multiple petitioners and permitted separate treatment of them for different purposes. See, e.g. , 35 U.S.C. § 317(a) (addressing continuation of IPR as to some petitioners after dismissal of others). In concluding that this is the best reading of the statute and its parroting regulation, we are not deciding whether the statute is ambiguous and could permissibly be implemented through a different regulation providing for separate treatment of multiple petitioners in assessing timeliness under the one-year time bar-a distinct question that would arise if the Director newly adopted such a regulation. See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs. , 545 U.S. 967, 982-85, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (holding that, where a court determines the "best reading" of a provision without finding an "unambiguous" meaning, the Chevron step one question is not answered, and an agency having Chevron authority may adopt a different statutory position and have it tested under the Chevron frame-work).[7]
*1339 Under the unitary-entity interpretation of section 315(b) and its implementing regulation, the petition at issue here was untimely. "The petitioner" (all four petitioners considered collectively) filed the single petition more than one year after YP Interactive (operating under the name Keen), which is itself both "the petitioner" and a real party in interest, was served with a complaint alleging infringement of the '836 patent. The Director was therefore barred from instituting this IPR based on this petition.
Because this IPR was not instituted properly, the final written decision was entered contrary to a statutory command and must be set aside. Petitioners cite nothing to support a conclusion that the error in instituting on this petition could be deemed harmless just because a different petition might have been filed that would have permitted institution of a different IPR to review the same patent claims. Indeed, that circumstance would often be the case, since any "person who is not the owner of a patent" may file a petition for an IPR. 35 U.S.C. § 311(a). Accordingly, what matters here is whether this petition provided a lawful basis upon which to institute this IPR. Cf. SAS , 138 S.Ct. at 1358 n.* (explaining that the possible existence of a different path to the same agency result-there, partial institution-did not validate the path actually followed). Section 315(b), as implemented by the current regulation, is best understood to answer that question no.
Petitioners' additional reliance on §§ 315(c) and 317(a) in an effort to save this petition as to some petitioners does not persuade. Petitioners' § 315(c) theory would seem to be that the petition may be viewed as having been filed solely by the Oracle and YellowPages.com petitioners and merely joined by YP Interactive, so that the timeliness determination could disregard YP Interactive. Petitioners' § 317(a) theory would seem to be that YP Interactive might be dropped from the IPR, leaving only the other petitioners, as to which the Board may continue. As already noted, however, the availability of a path not taken does not validate the path actually taken. SAS , 138 S.Ct. at 1358 n.*. Although § 315(b) provides that its time bar "shall not apply to a request for joinder under subsection (c)," it is undisputed that no such "request for joinder" was made in this case. Indeed, the regulation governing joinder requires that "[a]ny request for joinder must be filed ... no later than one month after the institution date of any [IPR] for which joinder is requested." 37 C.F.R. § 42.122(b) (emphasis added). This one-month deadline, which the Director imposed by regulation after notice and comment, Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents , 77 Fed. Reg. 48,680 -01, 48,681, 2012 WL 3276880 (Aug. 14, 2012), has long since passed.[8]
*1340 Similarly, while § 317(a) permits the termination of IPR proceedings that have been instituted "with respect to any petitioner"-and even permits the Office to "proceed to a final written decision" where "no petitioner remains in the inter partes review"-such termination can only occur "upon the joint request of the petitioner and the patent owner unless the Office has decided the merits of the proceeding before the request for termination is filed." No joint request for termination was made in this case. The fact that Congress afforded petitioners the opportunity to settle with patent owners after institution does not address the predicate question of whether the IPR was properly instituted in the first place.
Further support for our reading of § 315(b) is found in decisions of the Board's own panels. In Terremark North America LLC v. Joao Control & Monitoring Systems, LLC , No. IPR2015-01482, 2015 Pat. App. LEXIS 12695 (P.T.A.B. Dec. 28, 2015), Paper No. 10, the panel con-fronted a situation involving multiple petitioners seeking institution of an IPR, in which some but not all of the petitioners were time-barred. In that case, CoxCom was the only petitioner that was not served with a complaint more than one year before the IPR petition was filed. 2015 Pat. App. LEXIS 12695, at *19. The petitioners argued that, because CoxCom was not time-barred, § 315(b) should not apply to the jointly filed IPR petition. Id. The Board rejected this argument based on the reasoning set forth in an earlier decision, PNC Bank, N.A. v. Maxim Integrated Products, Inc. , No. CBM2014-00041, 2014 WL 2536982, at *2 (P.T.A.B. June 3, 2014), Paper No. 19, in which the Board denied institution of CBM review where PNC Bank was "both a petitioner ... and a real party in interest," and previously filed a civil action challenging the validity of claims of the challenged patent. Id. at *2. This set of facts resulted in institution being barred under § 325(a)(1), notwithstanding that other named petitioners were not barred by this provision. Id. The Board held that, as a result, "§ 325(a)(1) precludes institution of a review in this proceeding," notwithstanding that other named petitioners were not barred by this provision. Id.
Notably, the Board also considered, but rejected, the petitioners' argument that § 325(a)(1) would not bar institution if PNC were to "forswear all further control and participation in this case" or have adverse judgment entered against it, permitting the other petitioners to proceed without its involvement.[9] Id. The Board reasoned that, because "PNC has already exerted substantial control over the case" and because "granting PNC's request for adverse judgment would not obviate the control that PNC has already exerted in this proceeding by its filing of the Petition," ruling upon PNC's motion for judgment "would not alter [its] conclusion that § 325(a)(1) precludes institution of a CBM review as requested in the Petition." Id.[10]
Turning back to Terremark , the Board there wrote that the non-CoxCom petitioners, like PNC, "already have exerted substantial control over the case by participating in filing the Petition, appointing *1341 counsel, etc.," and therefore "[t]he presence of CoxCom ... does not remove the statutory bar." 2015 Pat. App. LEXIS 12695, at *21. Here, too, "removing" Ingenio/YP Interactive from the IPR would not alter the fact that it has participated for several years in this proceeding in violation of § 315(b). Appellees' unsupported assertion that there is nothing about the relationship between these parties that indicates control over the other joint petitioners by Ingenio/YP Interactive does not change our view. Where the parties choose to be joint petitioners in a single petition, the petition must-under current law-be assessed in light of that choice.
In conclusion, to the extent Petitioners rely on §§ 315(b), 315(c), and 317(a) to argue that the Board's institution of IPR proceedings in this case was "harmless," we have made clear that "[t]he timely filing of a petition under § 315(b) is a condition precedent to the Director's authority to act"-indeed, it "sets limits on the Director's statutory authority to institute." Wi-Fi One , 878 F.3d at 1374. There is nothing "harmless" about the institution of this IPR in excess of statutory authority and contrary to "the law's demands." SAS , 138 S.Ct. at 1359.
Finally, we conclude that a remand for consideration of this multi-petitioner issue is not warranted. Neither Petitioners nor CTC seek a remand for further Board proceedings. That fact is significant not only because of the IPR regime's general policy of expedition, see 35 U.S.C. §§ 314(b), 316(a)(11), but also because the IPR regime creates "a party-directed, adversarial process" rather than an "agency-led, inquisitorial process," SAS , 138 S.Ct. at 1355. After all, "it's the petitioner, not the Director, who gets to define the contours of the proceeding." Id.
Only the Director suggests a remand on this issue. But the Director identifies no material facts requiring further development on remand. And, the Director has not explained exactly what the Board might wish to, or be able to, consider on remand. The issue in this case thus raises only a legal question, and under current law, including the current regulation, the answer to the legal question is already determined in this opinion. The Board must follow the governing regulations, see , e.g. , Crediford v. Shulkin , 877 F.3d 1040, 1047 (Fed. Cir. 2017), and it must follow our binding interpretation where, because the regulation merely parrots the statute, deference is not owed even to the Director's interpretation of the regulation, much less to a Board panel's interpretation, see supra n.6 (quoting Gonzales v. Oregon ). See In re Lovin , 652 F.3d 1349, 1353-54 (Fed. Cir. 2011) (discussing Brand X and agency's duty to follow judicial interpretation of regulations generally, but deferring to intervening change of regulation). It is conceivable that the Director might promulgate a new regulation during remand-though the Director has not even taken a position on this issue, much less suggested that a regulation is on the horizon, and there would be a question about retroactive application of any such changed regulation. See Bowen v. Georgetown Univ. Hosp. , 488 U.S. 204, 208-09, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). We know of no authority or sound basis to support a remand to allow for a possible intervening change of law, especially in the context of a statute prizing expedition. We therefore vacate the Board's Final Written Decision and remand so the Board can dismiss this IPR proceeding. We leave Petitioners to litigate the merits of the '836 patent in the long-stayed district court case, where there will be no estoppel bar to such litigation, as CTC has expressly conceded.
III. CONCLUSION
For the foregoing reasons, we vacate the Board's Final Written Decision and remand *1342 for the Board to dismiss IPR2013-00312.
VACATED AND REMANDED
COSTS
Costs to Click-to-Call Technologies, LP.

The appeal in the Keen Action was also dismissed by agreement of the parties on March 19, 2003, under Fed. R. App. P. 42(b). Keen, Inc. v. Inforocket.Com, Inc. , 60 F. App'x 809 (Fed. Cir. 2003).

As we discuss in Section II(D)(2), infra , Petitioners identified themselves as a singular "Petitioner" in their IPR petition. For simplicity, we refer to the collective as "Petitioners" in this Opinion. We use this convention even though Oracle Corp. and Oracle OTC Subsidiary LLC filed an unopposed motion to withdraw from further participation in this appeal on June 14, 2018, after settling their disputes with CTC. See Mot. to Withdraw, No. 15-1242 (Fed. Cir. June 14, 2018), ECF No. 121. These entities noted that their "motion does not affect the participation of the non-Oracle Appellees, YellowPages.com LLC and YP Interactive LLC, in this appeal." Id. at 1. As neither the other Petitioners' participation in this appeal nor the outcome of this case would be affected by granting the Oracle entities' requested relief, we granted their motion. See Order Granting Mot. to Withdraw, No. 15-1242 (Fed. Cir. July 24, 2018), ECF No. 123.

The en banc court formed of Prost , Chief Judge , Newman, Lourie, Dyk, Moore, O'Malley, Reyna, Wallach, Taranto, Chen, Hughes , and Stoll , Circuit Judges , considered whether 35 U.S.C. § 315(b)'s time bar applies to bar institution when an IPR petitioner was served with a complaint for patent infringement more than one year before filing its petition, but the district court action in which the petitioner was so served was voluntarily dismissed without prejudice. The en banc court holds that § 315(b)'s time bar applies in such a scenario.

Although the stipulations of dismissal in this case were jointly entered by the predecessors of both CTC and Ingenio, we acknowledge that plaintiffs in civil suits can seek dismissal without prejudice pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure in certain circumstances without a court order and without any involvement by the defendant. This reality does not alter our conclusion that the subsequent dismissal of a civil action is irrelevant to whether a petitioner, real party in interest, or privy of the petitioner was previously "served with a complaint" within the meaning of § 315(b). To the extent the parties debate whether the Board's interpretation of § 315(b) results in good policy, "who should win that debate isn't our call to make." SAS , 138 S.Ct. at 1358.

We ignore for the purpose of this appeal whether the Board improperly placed the burden of demonstrating that the IPR petition was time-barred on CTC, the patent owner.

The background legal principle on which the Director and Petitioners rely cannot be as absolute as they contend. We have little doubt that a contract clearly and unambiguously providing for a payment to be due upon service of a complaint would render such payment due, and remaining due, upon service of a complaint that is later dismissed without prejudice. A statutory bar that is clearly and unambiguously triggered by service of a complaint, such as § 315(b), is to the same effect.

Were the Director or Board merely to interpret (rather than change) the current regulation to allow separate treatment of co-petitioners for § 315(b) purposes, that interpretation would not be owed deference in light of our interpretation of the existing regulation, given the statute-parroting nature of this regulation. See Gonzales v. Oregon , 546 U.S. 243, 257, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) (ruling that "the existence of a parroting regulation does not change the fact that the question here is not the meaning of the regulation but the meaning of the statute," and "[a]n agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language").

We recognize that a number of Board panels have constrained joinder in apparent recognition of a tension between §§ 315(b) and (c). Where an otherwise time-barred petitioner seeks to join an IPR under § 315(c), Board panels consistently have granted such requests only under limiting conditions, such as (1) that the party seeking joinder "maintain a secondary role in the proceeding," Pfizer, Inc. v. Biogen, Inc. , No. IPR2017-01115, 2017 WL 3081981 (P.T.A.B. July 18, 2017), Paper No. 13; or (2) that they appear in the IPR proceeding and attend depositions and oral hearing, but not file papers, engage in discovery, or participate in any deposition or oral hearing, Ion Geophysical Corp. v. WesternGeco LLC , No. IPR2015-00565, 2015 WL 1906173, at *4 (P.T.A.B. Apr. 23, 2015), Paper No. 14. There was no such limitation on YP Interactive's participation in this IPR.

37 C.F.R. § 42.73(b) provides that "[a] party may request judgment against itself at any time during a proceeding."

At oral argument, counsel for the Director was unable to articulate why the fact that PNC involved CBM review, rather than an IPR, was relevant, given that the applicable statutes are similarly worded. See Oral Arg. at 33:45-33:55. Nor did counsel for the Director or for Petitioners explain why additional fact-finding (or remand) would be necessary on the issue of Ingenio/YP Interactive's control over or active involvement in this IPR proceeding.