# United States Court of Appeals for the Federal Circuit

———————————

**MELVIN A. CREDIFORD,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

———————————

2016-1386

———————————

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-2018, Chief Judge Robert N. Davis.

———————————

Decided: December 18, 2017

———————————

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, for claimant-appellant.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER; BRIAN D. GRIFFIN, BRYAN THOMPSON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before NEWMAN, O'MALLEY, and WALLACH, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Veteran Melvin A. Crediford appeals the decision of the Court of Appeals for Veterans Claims ("Veterans Court"), upholding the Board of Veterans' Appeals ("Board") denial of service connection for his cervical spine condition.[1] Two issues are presented: first, the scope of Federal Circuit appellate jurisdiction as to the disputed issues of law and fact; and second, whether the Veterans Court applied the correct legal standards in reviewing the factual findings affecting Mr. Crediford. We vacate the Veterans Court's judgment and remand for further proceedings.

## BACKGROUND

Mr. Crediford served with the United States Coast Guard from August 1983 to August 1985, and again from January 1990 to March 1991. On January 20, 1985, Mr. Crediford worked from 6:30AM to 6:30PM in the galley at the Grays Harbor Station of the Westport, Washington, Coast Guard base. He then visited the Veterans of Foreign Wars Club in Westport, where he drank alcoholic beverages. After leaving the Club he was in an automobile accident, when his car did not negotiate a sharp turn, and rolled over. No other person or vehicle was involved.

Mr. Crediford was first taken to a hospital. He was then taken to a police station, where a breath test regis-

---

[1]    *Crediford v. McDonald*, No. 14-2018, 2015 WL 5092588 (Vet. App. Aug. 31, 2015) ("Vet. Ct. Op.").

tered a blood alcohol level of 0.12 percent, three and a half hours after he last drank alcohol. Vet. Ct. Op. at \*1. The police entered a charge of driving while under the influence of alcohol.

Mr. Crediford reported the accident to the Coast Guard, and the local commanding officer at the Grays Harbor Station issued a Report dated April 19, 1985. The Report stated that fatigue and alcohol were responsible for the accident, and concluded that Mr. Crediford's "injuries were not a result of his own misconduct and were incurred in the line of duty." J.A. 75–80 (Report of Chief Warrant Officer 3 Bruce J. Spano, Investigation of Injuries Sustained by SA Melvin A. Crediford USCG, in Westport, WA on 20 Jan 85 (Apr. 19, 1985)). The Report included findings and conclusions, stating that SA Crediford did not commit willful misconduct and the injury was incurred in the line of duty. The Report recommended:

1. That no disciplinary action be taken against SA Crediford.

2. That all members of Station Grays Harbor undergo the Coast Guard's Driver Perception Course as soon as possible.

3. That the Coast Guard's policy on seatbelts and drinking and driving again be disseminated to the Station Grays Harbor crew and that it be incorporated into the quarterly training schedule.

J.A. 80.

The April 19, 1985 Report, including the "findings of fact, opinions, and recommendations of the investigating officer," was approved in an "ACTION OF THE CONVENING AUTHORITY" on May 7, 1985. The Convening Authority stated in the Action, "I have reviewed the general circumstances surrounding this incident with the crew of Station Grays Harbor. All personnel were

made aware of the potential for serious injury or death as a result of driving while fatigued and/or intoxicated." J.A. 81. The Convening Authority further stated that "reviewed in detail were the serious consequences for service members involved in findings of misconduct and not in the line of duty," that "the entire crew [of Station Grays Harbor] has completed the Coast Guard Driver Perception course," and that "SA Crediford has been counseled on the Commandant's policy relating to alcohol abuse." *Id.* J.F.C. Duncan signed the Action.

In the ensuing police proceeding, Mr. Crediford pleaded guilty to a charge of negligent driving and paid a fine. He left the Coast Guard in August 1985, for reasons of family hardship. He reenlisted in 1990.

On December 13, 1985, the Commander of the Thirteenth Coast Guard District issued a Memorandum, in which he referred to a "finding" by the Commandant of the Coast Guard, dated November 20, 1985,[2] that was said to have "approved a finding that injuries sustained by SA Crediford on 20 January 1985 were 'not incurred in the line of duty and were due to his own misconduct.'" J.A. 37 (Commander, Thirteenth Coast Guard District (T.F. McGrath), SA Melvin A. Crediford, USCG (Dec. 13, 1985)).

In June 2004, Mr. Crediford filed a claim for compensation based on "severe pain," a condition that he stated "has gradually increased" over time. J.A. 39–48. Mr. Crediford filed a "Statement In Support of Claim," stating that he was seeking compensation, in part, for "chronic pain due to spinal & soft tissue injury caused from an automobile accident." J.A. 53.

---

[2] The November 1985 document containing the finding by the Commandant is not in the record before us.

The Regional Office ("RO") denied compensation, ruling that "[d]isabilities resulting from Melvin Arthur Crediford's automobile accident on January 20, 1985 involving a DUI, are considered to be the result of his own willful misconduct and are determined to have not occurred 'in the line of duty.'" J.A. 57, 60–62. The RO's decision also stated that "[t]he veteran's service medical records do not contain a line of duty determination regarding this accident." J.A. 58. The decision identifies the December 1985 Memorandum from the Commander of the Thirteenth District, but does not mention the April 1985 Report and Action of the Convening Authority. J.A. 57.

Mr. Crediford states that he did not submit the April 1985 Report and its subsequent approval by the Convening Authority to the VA until after the Regional Office decision was issued. Appellant Br. 4. Mr. Crediford also stated, in the hearing before the Board, that the December 1985 Memorandum, referencing the November 1985 finding by the Commandant, was issued "post-discharge, without notice that an LOD investigation was ongoing and not disclosed. To my knowledge the investigation was closed, as per the copy that I received at the conclusion of my unit command's investigation." J.A. 129–30.

On appeal to the Board, the Board found "that the preponderance of the evidence is against the Veteran's claim." J.A. 144. The Board found the "January 1985 motor vehicle accident was caused by the Veteran's alcohol consumption and constitutes willful misconduct. As such, injuries sustained in that accident were not incurred in the line of duty and the appeal is denied." J.A. 146. The Board "note[d] that a blood alcohol percentage of 0.08 or more raises a presumption that the person was under the influence of intoxicating liquor," and that it "was not rebutted in this case." J.A. 143, 145.

Mr. Crediford appealed to the Veterans Court. The court affirmed, stating that the Board "provided an adequate statement of reasons or bases" and that the Board's finding that Mr. Crediford's injury was caused by his "willful misconduct" was "plausible in light of the record as a whole." Vet. Ct. Op. at *3. Neither the Board nor the Veterans Court resolved the discrepancy between the local commanding officer's and the Convention Authority's finding of no willful misconduct, and the later contrary finding by a different officer.

On this appeal, Mr. Crediford stresses this distinction, and argues that the local commanding officer's and Convening Authority's decision should prevail because "the document which purported to be a Commandant's approval of a finding that the injuries sustained by Mr. Crediford were 'not incurred in the line of duty and were due to his own misconduct' was not a line of duty determination." Appellant Br. 15. Mr. Crediford continues that "[t]he November 20, 1985 document was not in the record before either the Board or the court below." *Id.* "Therefore, as a matter of law because the Board made no determination that [the April 1985] service department's line of duty determination was 'patently inconsistent with the facts and laws administered by the Department of Veterans Affairs,' the **only** report of record that Mr. Crediford's 'injuries were not a result of his own misconduct and were incurred in the line of duty,' was binding on the VA." Appellant Br. 16 (emphasis in brief) (record citation omitted) (quoting in part 38 C.F.R. § 3.1(n)).

## DISCUSSION

### *Review and Jurisdiction*

38 U.S.C § 7292(a) authorizes Federal Circuit review of the "validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the Court in making the decision." This court also has jurisdiction

"to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). Furthermore, the "Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1). However, unless a constitutional issue is presented, the Federal Circuit "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

### *Presumptions*

Injuries incurred during military service are presumed to be "incurred in the line of duty." 38 U.S.C. § 105(a). This presumption can be rebutted if the injury was "caused by the veteran's own willful misconduct or abuse of alcohol or drugs." *Holton v. Shinseki*, 557 F.3d 1362, 1367 (Fed. Cir. 2009); *see* 38 U.S.C. §§ 105(a), 1110.

"Willful misconduct means an act involving conscious wrongdoing or known prohibited action." 38 C.F.R. § 3.1(n). "It involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences." *Id.* § 3.1(n)(1). The regulations provide that the consumption of alcohol does not of itself constitute willful misconduct, but if a service member consumes alcohol to enjoy its intoxicating effects, and the intoxication "proximately and immediately" results in injury, the injury is considered to have resulted from willful misconduct. 38 C.F.R. § 3.301(c)(2). Willful misconduct, even if found to be present, "will not be determinative unless it is the proximate cause of injury, disease, or death." 38 C.F.R. § 3.1(n)(3).

A "service department finding" that an injury was not the result of willful misconduct "will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the facts and the requirements of laws administered by the Department of Veterans Affairs."

38 C.F.R. § 3.1(n). Section 3.1(m) similarly states that a "service department finding" that an injury occurred within the "line of duty will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the requirements of laws administered by the Department of Veterans Affairs." Mr. Crediford states that the finding of his commanding officer in the April 1985 Report, and its adoption by the Convening Authority, is such a "service department finding," and should have been binding on the Department of Veterans Affairs. Appellant Br. 14–16. He challenges the later November 1985 reversal by a higher officer at a different location, as well as the reversal's absence from the record—contending it is only referenced by the December 1985 Memorandum.

Mr. Crediford also argues that the Board and the Veterans Court created a new per se standard or presumption of willful misconduct based solely on blood alcohol level, contrary to VA regulation. Appellant Br. 21–24; 38 C.F.R. § 3.1(n)(2) ("Mere technical violation of police regulations or ordinances will not per se constitute willful misconduct."). The Secretary responds that the Board and the Veterans Court did not create a new per se standard for misconduct, but simply weighed all of the evidence including the local commanding officer's conclusion that there was not willful misconduct. Appellee Br. 14–15.

We have appellate jurisdiction "[i]n cases where the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome of a veteran's claim." *Conley v. Peake*, 543 F.3d 1301, 1304 (Fed. Cir. 2008); *see also Morgan v. Principi*, 327 F.3d 1357, 1361 (Fed. Cir. 2003) (amendments to 38 U.S.C. § 7292(a) authorize Federal Circuit jurisdiction on a "rule of law"). Thus we have reviewed the question of whether the Veterans Court adopted a new legal standard based on blood alcohol level. We have also considered whether the later reversal of the local commanding officer's and

Convening Authority's assessment raised any due process concerns. *See Cushman v. Shinseki*, 576 F.3d 1290, 1291, 1296–98 (Fed. Cir. 2009) ("[W]e find that a veteran alleging a service-connected disability has a due process right to fair adjudication of his claim for benefits.").

I

Mr. Crediford states: "There was no evidence of record that Mr. Crediford's alcohol consumption and excessive speed was the cause of the January 1985 motor vehicle accident." Appellant Br. 18 (emphasis in brief). Mr. Crediford argues that the Board created and then relied on a presumption that intoxication, measured by blood alcohol, constituted per se willful misconduct. He states that 38 C.F.R. § 3.301(c)(2) requires finding that intoxication "proximately and immediately" caused the event, and that in his case fatigue was found by the commanding officer to have contributed to the event.

The Board referred to Mr. Crediford's charge of "negligent driving to which he pled guilty," and his admission of alcohol consumption and speed in excess of the posted limits. J.A. 144, 146. The Board found "that the preponderance of the evidence shows that the Veteran was driving his car at an excessive rate of speed after consuming alcohol at the time of the accident. These actions proximately and immediately caused his car accident." J.A. 146.

The Veterans Court "reject[ed] Mr. Crediford's argument that the Board overlooked evidence of fatigue." Vet. Ct. Op. at *2. "Despite evidence of fatigue, however, the Board concluded that a preponderance of the evidence weighed against Mr. Crediford's claim." *Id.* (citations omitted). The Veterans Court stated that "the Board provided an adequate statement of reasons or bases, and its finding that Mr. Crediford's injury is a result of willful misconduct is plausible in light of the record as a whole." *Id.* at *3. The Veterans Court affirmed the Board's deci-

sion "that Mr. Crediford's injury is a result of his willful misconduct." *Id.* However, the question is not whether this finding is supported, but whether the Board had authority to ignore the Service Department's findings.

## II

Mr. Crediford argues that, under 38 C.F.R. § 3.1(m)–(n), the April 1985 Report by the commanding officer at his duty station, soon after the accident, is "binding on the VA." Appellant Br. 12–16; Reply Br. 6–7. The April 1985 Report of the initial investigation, approved by "ACTION OF CONVENING AUTHORITY" on May 7, 1985, determined that his "injuries were not a result of his own misconduct and were incurred in the line of duty." J.A. 79, 81.

Mr. Crediford argues that the initial investigation and the subsequent Action of Convening Authority in April and May 1985, constitute the only proper line-of-duty determination, and that the conflicting finding issued months later, in the November 1985 document, after his tour of duty had ended in August, is not a proper line-of-duty determination. J.A. 37. Mr. Crediford continues that the November 1985 document containing the contrary finding by the Commandant "was not in the record before either the Board or the court below." Appellant Br. 15. Mr. Crediford argues that the Board and the Veterans Court erred in law, by giving controlling weight to this later ruling that he was not able to rebut, while ignoring his commanding officer's contemporaneous finding of no willful misconduct and that his injuries were incurred in the line of duty.

Neither the Board nor the Veterans Court resolved this conflict, though they mentioned it. The Board stated: "In an April 1985 Memorandum from the Commanding Officer of the Coast Guard Station Grays Harbor, it was noted that . . . the Veteran's injuries were not a result of his own misconduct and were incurred in the line of duty."

J.A. 144. However, the Board continued, "In December 1985, the Commander of the Thirteenth Coast Guard District issued a memorandum whereby it was determined that the injuries the Veteran sustained in January 1985 were not incurred in the line of duty and were due to his own misconduct." J.A. 144. The Board did not reconcile the conflicting determinations issued by the Coast Guard. *See* 38 U.S.C. § 7104(a) (requiring that the Board shall consider "all evidence and materials of record and applicable provisions of law and regulation").

The regulations provide that "a service department finding" that an injury was not the result of willful misconduct "will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the facts and the requirements of laws administered by the Department of Veterans Affairs." 38 C.F.R. § 3.1(n); *see also* § 3.1(m) (stating determinations that an injury "occurred in the line of duty" will be binding "unless patently inconsistent with the requirements of law"). The regulations recognize that the Service Department is in the best position to assess willful misconduct and line of duty actions of its Service. *See United States v. Yellow Cab Co.*, 338 U.S. 338, 341 (1949) ("Findings as to the design, motive and intent with which men act depend peculiarly upon the credit given to witnesses by those who see and hear them.") (discussing then-Fed. R. Civ. P. 52 (stating "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses")).

We conclude that the Board erred in simply making its own findings on the question of willful misconduct when there were service department findings before it. Mr. Crediford argues that the local commander's finding should control, as opposed to remote Coast Guard authority. The answer to this conflict was not to ignore it, for the VA regulations assign "binding" determination of "willful misconduct" and "line of duty" to the Service Department. 38 C.F.R. § 3.1(m)–(n). The Coast Guard's

determinations, made in 1985 when the accident occurred, must be addressed. It was error for the Board to make its own findings of the facts of line of duty and willful misconduct.[3]

"[A]n agency is bound by its own regulations." *Wagner v. United States*, 365 F.3d 1358, 1361 (Fed. Cir. 2004) (citing *Service v. Dulles*, 354 U.S. 363, 388 (1957)). "It has long been established that government officers must follow their own regulations, even if they were not compelled to have them at all . . . ." *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988). This court has also held that "[v]eteran's disability benefits are nondiscretionary, statutorily mandated benefits," and applicants as well as recipients enjoy a due process right to those benefits. *Cushman*, 576 F.3d at 1297–98. Mr. Crediford has not received appropriate application by the Department of Veterans Affairs of the regulations for adjudicating service connection claims when service department findings are present in the record. To that end, we vacate the judgment of the Veterans Court, and remand for further proceedings on the question of application of 38 C.F.R. § 3.1(m)–(n) to the service department procedures and rules herein.

## VACATED AND REMANDED

COSTS

---

[3]    The Secretary now states that at the time of the automobile accident in 1985 the Coast Guard was operating not as a "service department," but was statutorily operating as part of the Department of Transportation under 14 U.S.C. § 3(a) (1985). Appellee Br. 27 n.4. We note, as does the Secretary, this aspect was not raised in either the Board or the Veterans Court, and in all events, does not change the rationale of the regulations.

Costs to Mr. Crediford.