NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CATHERINE A. PATACCA,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

---

2018-1882

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-17-0574-I-1.

---

Decided: March 27, 2019

---

CATHERINE A. PATACCA, San Diego, CA, pro se.

SONIA W. MURPHY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

---

Before NEWMAN, CHEN, and STOLL, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Catherine A. Patacca seeks review of the decision of the Merit Systems Protection Board ("MSPB" or "Board") affirming the Department of the Navy decision to remove her from her position as an administrative support assistant.[1] We discern no reversible error in the Board's affirmance of Ms. Patacca's removal.

BACKGROUND

From May 18, 2015, through June 30, 2017, Ms. Patacca was a civilian employee of the Navy at the Marine Corps Recruit Depot in San Diego, California, serving as an administrative support assistant in the Religious Ministries Office ("RMO"). The RMO provides pastoral counseling and support services, "as Marines and Sailors often feel more comfortable speaking with their chaplain concerning personal issues or problems before approaching another health care professional." Respondent's Appendix ("R.A.") 66. As an administrative support assistant, Ms. Patacca worked with Service members seeking counseling. Her immediate supervisor was Chief Petty Officer ("CPO") Nicholas Gaston, the Religious Ministries Command Chief. R.A. 29; 56.

A. Notice of Proposed Removal

On April 19, 2017, CPO Gaston issued a Notice of Proposed Removal for Ms. Patacca. The notice stated three charges: (1) delay in carrying out work assignments; (2) failure to follow supervisory instructions; and (3) inappropriate conduct.

The first charge, for delay in carrying out work assignments, was supported by two specifications. The first specification recited Ms. Patacca's failure to timely standardize

---

[1]    *Patacca v. Dep't of the Navy*, No. SF-0752-17-0574-I-1, 2018 WL 582834 (M.S.P.B. Feb. 27, 2018) ("MSPB Op.").

the RMO's personnel files and records, despite repeated instructions to do so. The second specification recited Ms. Patacca's recurrent delay in ordering spiritual family books for the RMO, which caused an increase of $500 in the cost of the book purchase. R.A. 67–68.

The second charge, for failure to follow supervisory instructions, was based on Ms. Patacca's repeated interruption of Service member counseling sessions, despite having been previously disciplined for the same offense. R.A. 68.

The third charge, for inappropriate conduct, recited two specifications. The first specification was based on a comment to CPO Gaston that he deemed disrespectful and discourteous. R.A. 68. The second specification was based on Ms. Patacca's continued objections and refusals to correct certain mailing labels as instructed by her supervisor. R.A. 68–69.

CPO Gaston stated in the Notice of Proposed Removal that Ms. Patacca's "actions demonstrated a significant lack of judgment as a federal employee" and that her "repeated failure to follow my instructions also undermines the trust necessary to affect a positive employer/employee relationship." R.A. 69. CPO Gaston stated that her "delay in carrying out work assignments has caused extra time and money to be spent unnecessarily" and that her behavior "impacts on both the integrity and reputation of the AC/S, Religious Ministries' mission." *Id.*

## B. Agency Removal Action

Colonel R.W. Jones, as the "Designated Deciding Official," determined that the charges and specifications were "fully supported by a preponderance of the evidence" and that they were to be "sustained and warrant [Ms. Patacca's] removal." R.A. 72–73 ("Decision on Proposed Removal"). In evaluating the reasonableness of the action, Col. Jones described his consideration of the mitigating factors that supported Ms. Patacca, including her nearly nine

years of civilian federal service and her previous "acceptable" performance ratings. R.A. 73. Col. Jones described the aggravating factors that weighed against Ms. Patacca, including her role in "contact with the public [for] both internal and external customers" of the Religious Ministries Services. *Id.* Col. Jones also referred to her prior disciplinary record, for Ms. Patacca had previously served one-day, five-day, and ten-day suspensions for misconduct. *Id.*

Col. Jones concluded that Ms. Patacca's actions had "an impact on the integrity and reputation of the services provided by the AC/S, Religious Ministries." R.A. 73–74. He applied each of the twelve factors from *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981), and explained how each factor related to Ms. Patacca's removal. *See* R.A. 79–82 ("Deciding Official's *Douglas* Factor Consideration Worksheet"). Col. Jones ruled that removal was appropriate.

## C. Review by MSPB

Ms. Patacca appealed her removal to the Merit System Protection Board. The Administrative Judge ("AJ") held a hearing on October 3, 2017. The AJ issued an Initial Decision affirming all charges and specifications against Ms. Patacca, and affirming the reasonableness of removal based on the adjudicated conduct. R.A. 1–37 ("Initial Decision").

The AJ first addressed the charge of delay in carrying out work assignments. R.A. 3. With regard to the first specification, relating to the assignment of standardizing RMO personnel files, the AJ found that Ms. Patacca did not dispute that she had not timely completed the assignment, despite having three months to do so and having been granted an extension of time by CPO Gaston when the first deadline was not met. The specification was found supported by the preponderance of the evidence, and was sustained. R.A. 4–5.

The second specification, for failure to timely order spiritual family books, was also found supported by a preponderance of the evidence. The AJ credited testimony by CPO Gaston that Ms. Patacca had repeatedly delayed ordering the books despite instructions to do so. The AJ found that Ms. Patacca's testimony was "inconsistent" and that she "failed to adequately explain why she delayed processing these orders," apart from "asserting this was a low priority matter." R.A. 6–8. The AJ was unpersuaded by any of Ms. Patacca's reasons and "credited CPO Gaston over [Ms. Patacca]." R.A. 8.

The charge of "failure to follow supervisory instructions," based on Ms. Patacca's interruption of CPO Gaston's meetings with Service members, was also found supported. CPO Gaston testified that Ms. Patacca was "on notice not to interrupt meetings prior to the date of this specification, February 23, 2017, through various methods including a prior disciplinary action." R.A. 10. The AJ found that Ms. Patacca had previously been "suspended for, *inter alia*, repeatedly walking in and interrupting CPO Gaston as he met with others in his office, without knowing or asking to interrupt as instructed." R.A. 10. The AJ found that Ms. Patacca did not "adequately address whether she believed" that the reason she interrupted the meeting in question "was sufficiently urgent to warrant interrupting this meeting with the sailors, nor did she otherwise adequately explain why she interrupted this meeting with the sailors on February 23, 2017." *Id.* The AJ sustained this charge.

The AJ next addressed the charge of inappropriate conduct, first reviewing the specification based on Ms. Patacca's comments deemed disrespectful during a meeting with CPO Gaston. As detailed in the Notice of Proposed Removal, CPO Gaston testified that when a Service member came to his office, Ms. Patacca, who was meeting with CPO Gaston asked him, approximately, and "in a disrespectful tone" that the Service member "can enter your

office without being corrected, but I can't?" R.A. 11. The AJ received further testimony from the Service member who was present, Petty Officer Third Class ("PO3") Ruddock. The AJ found PO3 Ruddock's testimony to be "specific, detailed, consistent with credible testimony of CPO Gaston, consistent with his written statement under penalty of perjury, and not inherently improbable." R.A. 12. The AJ found that Ms. Patacca "did not dispute the recollections of CPO Gaston and PO3 Ruddock," and concluded that the "agency has shown by preponderant evidence that the charged conduct occurred, and [also] prove[d] by preponderant evidence that the proven conduct was inappropriate." *Id.* The charge was sustained.

The second specification of inappropriate conduct arose from the dispute over the labeling of invitation envelopes. The Notice of Proposed Removal recited that Ms. Patacca was instructed to label envelopes for a retirement observance, but was unable to send the invitations as official correspondence because her labeling contained a five-digit zip code, whereas official correspondence required use of a nine-digit zip code. R.A. 13–14; R.A. 68 (Removal Notice). The notice also related that Ms. Patacca asked if instead of relabeling the envelopes with the nine-digit zip codes, she could "simply place postage stamps on the envelopes and mail as regular mail, in order to avoid the need to re-label and bypass the official mail system." R.A. 68. Though CPO Gaston denied the request, Ms. Patacca continued to protest, and asked Petty Officer First Class ("PO1") Bloodgood to intervene and "argue on her behalf." R.A. 69. After the new labels were prepared, Ms. Patacca is described as having again "protested" and "asked once again to do it [her] way." *Id.*

The AJ reviewed the specification and the testimony of CPO Gaston, PO1 Bloodgood, and Ms. Patacca; the AJ determined that "it was within [CPO Gaston's] discretion as senior NCO to ensure that official mail was properly sent as official mail through the military post office," and found

that Ms. Patacca's "conduct as set forth in this specification was improper, unsuitable, and/or detracted from [her] reputation." R.A. 15. The AJ found that the agency had proven by the preponderance of the evidence that the charged conduct had occurred and was inappropriate. *Id.*

The AJ reviewed whether the agency had shown a "nexus between the sustained charges and either the employee's ability to accomplish [her] duties satisfactorily or some other legitimate government interest." R.A. 28. The AJ credited the testimony of CPO Gaston and PO3 Ruddock as reflecting the negative impact Ms. Patacca's behavior had on her workplace. *Id.*

Ms. Patacca raised several defenses, including discrimination based on "age, sex, race; retaliation for prior protected EEO complaints; disability non-accommodation of her sleep apnea, depression, and anxiety; disparate treatment, disability discrimination based on sleep apnea, depression, and anxiety . . . ." R.A. 15–16. Ms. Patacca also argued that "the agency had an obligation to place her on a performance improvement plan (PIP) under Chapter 43" and that the removal was therefore "unlawful." R.A. 27–28.

The AJ held that: (1) placement in a PIP was not obligatory; (2) that the removal penalty was consistent with review of all relevant *Douglas* factors; (3) that the agency "had exercised management discretion within tolerable limits of reasonableness"; and (4) that the penalty of removal "was consistent with the agency's September 29, 2016 table of penalties in the record." R.A. 28–30. The AJ observed that Col. Jones had considered Ms. Patacca's failure to modify her behavior in the workplace based on prior disciplinary actions or take responsibility for those actions, and concluded that Ms. Patacca was a poor candidate for rehabilitation and "no lesser penalty would be appropriate or effective." R.A. 30.

Ms. Patacca did not petition the full Board for review; the AJ's decision became the final Board decision. This appeal followed.

## D. The Mixed-Case Appeal

For appeals of "mixed cases," where a federal employee asserts rights under both the Civil Service Reform Act and federal antidiscrimination laws, the forum for judicial review of MSPB decisions is the district court. *See, e.g., Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1979 (2017) ("[T]he Federal Circuit, while empowered to review MSPB decisions on civil-service claims, [5 U.S.C.] § 7703(b)(1)(A), lacks authority over claims arising under antidiscrimination laws, see § 7703(c)."); *id.* at 1985 ("Judicial review of such a [mixed] case lies in district court."). However, appeals asserting only claims under the Civil Service Reform Act are assigned exclusively to the Federal Circuit. *See id.* at 1979 ("If an employee asserts rights under the CSRA only, MSPB decisions, all agree, are subject to judicial review exclusively in the Federal Circuit.").

Ms. Patacca initially did not waive her discrimination claims, and this appeal was transferred from the Federal Circuit to the United States District Court for the Southern District of California. Order, Sept. 24, 2018, ECF No. 19. However, Ms. Patacca then waived her discrimination claims, and appeal was returned to this court. Order, Oct. 31, 2018, ECF No. 21 (reinstating appeal and striking discrimination claims). Because Ms. Patacca has waived all her discrimination claims, we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The decision of the Board is reviewed to determine whether it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial

evidence." 5 U.S.C. § 7703(c). The Board's findings of fact are reviewed for support by substantial evidence, and its legal determinations receive plenary review. *Jones v. Dep't of Health and Human Servs.*, 834 F.3d 1361, 1366 (Fed. Cir. 2016). A finding is supported by substantial evidence if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The petitioner before this court bears the burden of establishing reversible error by the Board. *Jenkins v. Merit Sys. Prot. Bd.*, 911 F.3d 1370, 1373 (Fed. Cir. 2019).

## A.

Ms. Patacca argues that the AJ "failed to take into account many relevant facts" in the course of "reviewing the specifications of [her] termination proposal." Pet'r's Br. 8. Ms. Patacca states that the AJ apparently did not consider the email correspondence with CPO Gaston in March 2017, where he stated that "he wanted to put the past behind us and even assist" Ms. Patacca in becoming named an employee of the year. *Id.* at 10. The Navy argues that CPO Gaston's intention to assist Ms. Patacca in improving her performance in March 2017, a month before his issuance of the Notice of Proposed Removal, is not relevant to whether the agency had carried its burden to prove the charges. The absence of discussion of evidence does not require the conclusion that said evidence was ignored or not considered, or that its consideration would have changed the result. "[A]bsent specific evidence indicating otherwise, all evidence contained in the record must be presumed to have been reviewed by the agency." *Snyder v. Dep't of Navy*, 854 F.3d 1366, 1373 (Fed. Cir. 2017) (alterations and omissions omitted); *Gonzalez v. West*, 218 F.3d 1378, 1381 (Fed. Cir. 2000) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise.") (quoting *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986)).

Concerning the envelope dispute, Ms. Patacca states that the AJ failed to consider the "fact that [PO1] Bloodgood lied under oath." Pet'r's Br. 12. Ms. Patacca states that contrary to PO1 Bloodgood's testimony, he did not offer to place stamps on the envelopes; instead it was Ms. Patacca who made that offer to CPO Gaston. *Id.* The Navy states that this is irrelevant to Ms. Patacca's refusal to make the requested changes to the addresses. We agree that substantial evidence supports the finding of inappropriate conduct.

Ms. Patacca also argues that the Board ignored the reasons why she delayed ordering the spiritual family books. Pet'r's Br. 14. Ms. Patacca states that the "reason for the delay was because [she] was following orders from Chief Gaston." *Id.* She states "[i]t was by Chief Gaston's direction to postpone this special order and caused it to be delayed," leading to the additional cost and expense of a tardy rush order. *Id.* The AJ addressed this argument, and found that CPO Gaston testified that it was Ms. Patacca's "duty to promptly process this order in January as part of her ongoing duties," and that "in resolving this question of whether the appellant was indeed given these instructions by CPO Gaston as claimed, [he] noted that CPO Gaston's testimony was unequivocal and based on personal knowledge." R.A. 6. The Board found that Ms. Patacca "failed to adequately explain why she delayed processing these orders after verifying funds were available" and "credit[ed] the testimony of CPO Gaston over" that of Ms. Patacca. R.A. 7–8.

The credibility of testimony is generally within the province of the trier of fact. The "evaluation of witness credibility is within the discretion of the Board and that, in general, such evaluations are 'virtually unreviewable' on appeal." *King v. Dep't of Health & Human Servs.*, 133 F.3d 1450, 1453 (Fed. Cir. 1998) (quoting *Clark v. Dep't of the Army* 997 F.2d 1466, 1473 (Fed. Cir. 1993)); *see Crediford v. Shulkin*, 877 F.3d 1040, 1046 (Fed. Cir. 2017) ("Findings

as to the design, motive and intent with which men act depend peculiarly upon the credit given to witnesses by those who see and hear them.") (quoting *United States v. Yellow Cab Co.*, 338 U.S. 338, 341 (1949)).

## B.

Ms. Patacca also argues that the Board committed errors of law through incorrect application of the *Douglas* factors. She points to the third *Douglas* factor, "the employee's past disciplinary record," as misapplied by the Board in terms of both the temporal proximity of her previous disciplinary actions and the similarity of offenses with which she was previously charged.

The AJ received testimony from the Navy's deciding official, Col. Jones, and referred to Col. Jones' testimony that he considered that Ms. Patacca had served three suspensions previously and had not modified her behavior despite the prior discipline. R.A. 29. He testified that he considered Ms. Patacca's prior suspensions for inappropriate conduct, failure to follow supervisory instructions, and dereliction of duty. The AJ cited Col. Jones' testimony that Ms. Patacca "was on clear notice that this type of misconduct would not be tolerated by the agency based on her prior discipline," and that she "continued to engage in a pattern of misconduct." R.A. 30. The AJ concluded that Col. Jones properly "considered the relevant factors." *Id.*

We discern no reversible error in the AJ's review of these factors.

## C.

Ms. Patacca also argues that the AJ improperly denied her request for a delay in the hearing date. On September 8, 2017, Ms. Patacca moved for a continuance from the scheduled hearing date of October 8, 2017 so that she would have additional time to "consult with an attorney who will assist with her case." R.A. 118 ("Appellant Requests Motion for Continuance"). She stated that she had

been in contact with two attorneys but neither was available in the next two weeks or to assist in her representation at the scheduled time. *Id.*

The AJ denied the motion, stating that the "unilateral request for delay is denied without exception for failure to comply with the Board's requirements," citing 5 C.F.R. § 1201.55(a), (c). R.A. 120 ("Order Denying Request for Delay"). Subsection (a) states that "[a] party filing a motion for extension of time, a motion for postponement of a hearing, or any other procedural motion must first contact the other party to determine whether there is any objection to the motion, and must state in the motion whether the other party has an objection." 5 C.F.R. § 1201.55(a). Subsection (c) provides that "[m]otions for extensions of time will be granted only on a showing of good cause." 5 C.F.R. § 1201.55(c). The record states that the hearing scheduled for October 8 was requested by Ms. Patacca on July 14, 2017; Ms. Patacca did not move for an extension of time until September 8, 2017. R.A. 120.

The AJ's decision to grant or deny an extension of time is reviewed for an abuse of discretion. *See Koch v. SEC*, 48 Fed. App'x 778, 783 (Fed. Cir. 2002) (citing *Johnson v. Dep't of the Treasury*, 721 F.2d 361, 364–65 (Fed. Cir. 1983)). Such discretion must include consideration of the efforts of aggrieved persons to obtain the assistance of counsel. In turn, the Board's regulatory requirement for consultation with the opponent is not unreasonable. The government stresses that despite her pro se status, Ms. Patacca remains subject to the Board's procedural regulations. *See, e.g., Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (explaining that despite being entitled to a "special solicitude," a party's "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law" (internal quotation marks omitted)).

We give special attention to pro se litigants efforts to obtain representation. However, Ms. Patacca does not

discuss her attempts to obtain counsel or provide any explanation of her non-compliance with the Board's regulations. On the record presented, we conclude that the AJ acted within his discretion in adhering to the hearing schedule.

D.

Ms. Patacca argues that the AJ denied her request to call additional witnesses "with no just cause," including two witnesses that Ms. Patacca stated were "vital." Pet'r's Br. 21.

Prior to the hearing, a pre-hearing conference was held on September 14, 2017, and witnesses that would be called at the hearing were required to be identified. R.A. 123–26 ("Order and Summary of the Prehearing Conference"). Ms. Patacca's request to testify on behalf of herself was approved, as well as joint requests for CPO Gaston to testify about the Notice of Proposed Removal and PO1 Bloodgood to testify about his conversations with Ms. Patacca concerning the invitation envelopes. R.A. 125.

The AJ denied Ms. Patacca's request for five additional witnesses, to testify on a range of matters including "her good performance and Chaplain Mikstay's negative view of her," and her assertion that she "works beyond her paygrade." R.A. 125–26. In denying these witness requests, the AJ stated that for each denied witness, he "grant[ed] leave to amend the subject proffer(s) within seven calendar days" and will "reconsider denied witnesses based on a more detailed proffer of their relevance and a statement indicating that the requesting party discussed and/or attempted to discuss the anticipated testimony with the requested witness." R.A. 126. Ms. Patacca provided such information as to two proposed witnesses: Ms. Cece Payne to testify as to her role in Ms. Patacca's termination, as an "HR Labor Relations Manager"; and Chaplain Mikstay to testify concerning his role as her supervisor for two years and his interest in having Ms. Patacca terminated in

2015. R.A. 127–30 ("Motion for Witnesses"). The AJ denied these two requested witnesses, based on Ms. Patacca's further failure to comply with Board regulations requiring prior discussion or attempted discussion with a proposed witness of the testimony to be elicited. R.A. 134–35 ("Order"). It is undisputed that such discussion, nor an attempt to have such discussion, had not been made.

"'Procedural matters relative to discovery and evidentiary issues,' such as the decision to exclude witness testimony, 'fall within the sound discretion of the board and its officials.'" *Thurston v. Dep't of Veterans Affairs*, 254 Fed. App'x 811, 813–14 (Fed. Cir. 2007) (quoting *Curtin v. Office of Pers. Mgmt.*, 846 F.3d 1373, 1378–79 (Fed. Cir. 1988)). Such matters are reviewed for an abuse of discretion. *Id.* When the petitioner is proceeding pro se*,* "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

However, as the government points out, the "Order and Summary of Prehearing Conference" expressly stated that denied witnesses would be "reconsider[ed]" based on a "more detailed proffer of their relevance" and an explicit statement describing compliance with the requirement for discussion with the witnesses regarding their testimony. R.A. 126. Ms. Patacca does not state that she subsequently complied with this requirement—she only argues that denial of her witnesses was an abuse of discretion. Pet'r's Br. 21.

Although it is imperative to administrative and judicial fairness that pro se participants have adequate opportunity to present their side of the case, here the AJ administered reasonable rules, which had been identified to Ms. Patacca. It has not been shown that the AJ acted unreasonably or unfairly. *See Davis v. Office of Pers. Mgmt.*, 918

F.2d 944, 946 (Fed. Cir. 1990) ("A determination whether the testimony of witnesses should be presented is within the sound discretion of the AJ.").

In the Prehearing Conference Summary, the AJ summarized the testimony stated to be elicited from the excluded witnesses, which included: "LCDR David Jeltema who worked with the appellant in 2015–16 to testify about the appellant's statements to him about Chaplain Mikstay's negative view of the appellant." R.A. 125. Ms. Patacca also requested "CDR Jack Carver to testify about the appellant's statements to him about Chaplain Mikstay and CPO Gaston, and Terri Crook to testify that the appellant works beyond her paygrade." R.A. 125–26. Such testimony was not stated or suggested to relate to the charged conduct.

Ms. Patacca has not "carried [her] heavy burden of showing that the alleged procedural errors were prejudicial and could have changed the outcome of the proceedings below." *Curtin*, 846 F.2d at 1379.

## CONCLUSION

We have considered all of Ms. Patacca's arguments, and conclude that the Board's decision is supported by substantial evidence, is in accordance with law, and that the AJ did not abuse his discretion in enforcing MSPB rules and regulations for hearing procedures. The decision is affirmed.

## **AFFIRMED**

Each party shall bear its costs.